UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JE'KYM ADONIS RENEE DOWELL                           CIVIL ACTION

VERSUS                                               NO. 15-1883

ORLEANS PARISH SHERIFF'S                             SECTION "R" (2)
OFFICE ET AL.

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff Je'kym Adonis Renee Dowell was a prisoner incarcerated in the Orleans Parish Prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Captain Kent Johnson, Lt. Holmes, Sgt. Watson and the Orleans Parish Sheriff's Office. Dowell alleges that while incarcerated in OPP, he was subjected to unconstitutional conditions of confinement and denied adequate medical treatment. He seeks monetary damages and injunctive relief. Record Doc. No. 4 (Complaint at ¶¶ IV and V).

On October 1, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Charlin Fisher, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Dowell testified that he is currently incarcerated in the new Orleans Parish Jail Complex, where he had recently been moved, as a pretrial detainee awaiting trial on

charges of second degree murder, felon in possession of a firearm and possession of cocaine.  He stated that he was then scheduled for trial on these charges in November 2015.[1]  He said that he was initially placed in OPP upon his arrest on these charges on August 6, 2014.

Dowell confirmed that his claims in this case arise from a single sewage backup incident that occurred on or about April 25, 2015, when a pipe broke in the first floor kitchen area of the Templeman 5 unit of OPP, where he was then being housed.  Dowell testified that on April 25th, a pipe broke on the ground floor and the downstairs area in Templeman 5 "flooded."  He said that when the pipe broke on the first floor, the water went onto the floor in that area.  Dowell conceded that he was being housed on a tier with other inmates on the second floor of Templeman 5 at that time, but he stated that because the pipe broke in the area where the kitchen was located, he was nevertheless affected by exposure of his food to the water.

Dowell stated that he did not see the broken pipe, but he saw water on the floor resulting from the break "when I was going to court."  He stated that he had to walk through the water and was exposed to it for "a couple of minutes, like ten to fifteen."  He described the water as "two feet" deep, up to his knees.  Asked if he was exposed to the water at any other time, he said, "our food had to come through there," because the

---

[1]A review of plaintiff's criminal cases reveals that at the time of issuance of this report, plaintiff had not yet gone to trial on these charges. Orleans Parish Criminal District Court Docket Master, Case Nos. 522593 and 522733.

kitchen where food was prepared for inmates was located on the first floor and the cart used to bring food to the inmates must have passed through the flood water on its way to inmates on the upper floors.

Dowell testified that, although he did not see any flood water come into contact with his food, he detected "foul odors" on the food "like a stink and funky odor" that lasted from "four days to a week." He said the flood water was present on the first floor "I think four days," but he admitted he saw it there only on "the two days I went to court."

Asked if he suffered any kind of physical injury as a result of the pipe break, he said "headaches, . . . that's about all." Dowell stated that he had not received the medical records I ordered the sheriff to produce to him and me. Record Doc. No. 8. He testified, however, that he "spoke with the doctor" about his problems resulting from the broken pipe, and the doctor "prescribed me . . . pills . . . for headaches." He stated that before seeing the doctor, he first had to "go through the nurses," so it was not until the week after the pipe broke that he saw a doctor. Dowell testified that he told the doctor "about the situation with the breakage; and then I told him about my nausea and my headache, and he prescribed the headache medicine and another medicine for dizziness and nausea." He confirmed that he received and took the prescribed medicine for about four weeks and that it addressed his problems.

Dowell testified that the broken pipe and resulting sewage backup were repaired "that Friday," within four days of the break. He acknowledged that he does not claim that the leak was caused intentionally, but instead was just a breakdown of the sewage pipe. He conceded that the pipe break did not affect his second floor living quarters, but alleged that it affected the food he was served that was prepared in the first floor kitchen area where the pipe broke. He said he did not eat the food during the time the pipe was broken because it smelled bad and he thought it had been affected by the water.

On cross-examination, Dowell testified that he sued Sheriff Gusman in this case because he was told that the sheriff was aware of the situation, while the other defendants were sued because they were physically present in the Templeman building during the leak.

At the conclusion of the conference, I ordered defense counsel to deliver Dowell's medical records to plaintiff immediately and provided plaintiff with an opportunity, through and including October 27, 2015, to provide me in writing with any written comments he might have about them. Record Doc. Nos. 19 and 21. However, no further written submissions from plaintiff have been received by the court.

## **ANALYSIS**

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been

4

filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations

of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis

of his claims.  Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II.    CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions resulting from a single incident of a broken pipe during his incarceration in OPP.  Dowell was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999).  In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had

---

[2]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Dowell's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise

9

to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

10

Dowell's written allegations and testimony meet neither of these two requirements.  The one-time broken pipe incident described by plaintiff, while plainly not comfortable or pleasant, does not rise to a level of seriousness constituting a constitutional violation.

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).  Short term sanitation problems like the single incident of a broken pipe in the instant case, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

11

Dowell's allegations about the single incident of a broken pipe and the foul odor and resulting temporary unsanitary conditions he generally described fail to establish constitutional violations.  See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days. <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Dowell to which he was exposed, including his mere speculation that his food may have been exposed to the leaking water, do <u>not</u> rise to the level of a constitutional violation.  Dowell acknowledged that the broken pipe was repaired and the water from the leak was cleaned within a few days of the incident. Thus, the conditions Dowell experienced in OPP were neither <u>virtually</u> <u>permanent</u> nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

As to his allegation that the pipe leak caused him to suffer headaches and nausea, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a <u>serious</u> or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).   Generally, this seriousness standard for a constitutional violation requires that plaintiff must establish "a life-long handicap or permanent loss."  <u>See</u> <u>Hill v. Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994), <u>overruled in part on other grounds by</u> <u>Hope v. Peltzer</u>, 536 U.S. 730, 739 (2002) (citing <u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).   Dowell testified that his headaches and nausea were ultimately treated successfully and resulted in no such permanent loss.  Therefore, his problems allegedly resulting from the broken pipe did <u>not</u> rise to the level of serious medical needs for constitutional purposes.

III.   <u>MEDICAL CARE</u>

Dowell was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir.

1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, as set out above, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test

16

is not met, it need not address the other component. <u>Davis</u>, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); <u>accord</u> <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837; <u>accord</u> <u>Tamez</u>, 589 F.3d at 770 (citing <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3368 (2010) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Dowell must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the headaches and nausea that he described presented a serious medical need that posed a substantial risk of harm for purposes of constitutional analysis. As discussed above, Dowell did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for

constitutional purposes.  See Hill, 40 F.3d at 1188; (citing Monmouth, 834 F.2d at 347 ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure readings alone do not indicate serious medical need); Banks v. Mannoia, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("bowel problems" and headaches not considered serious medical problems); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious). Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  As Dowell acknowledged, his minor conditions were successfully resolved by the treatment and medication he received.

Even assuming, however, without concluding that plaintiff's condition presented a serious medical need for constitutional purposes, Dowell has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.  Dowell testified that he was examined and treated by a doctor and nurses at the jail and that he received medication that successfully resolved his minor problems.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., LaBorde v. Lowe, 471 F. App'x 390, 391 (5th Cir. 2012) (no deliberate indifference to serious medical needs when inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital and discharged after receiving treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Dowell has alleged delay in receiving medical care in that before seeing a doctor, he first had to "go through the nurses," so it was not until a week after the pipe broke that he saw a doctor, and he has expressed dissatisfaction with the overall speed and quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the extensive and ultimately successful medical care Dowell received during his pre-trial incarceration.

Contentions like Dowell's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also LaBorde, 471 F. App'x at 391 (plaintiff "received extensive medical care and numerous prescription medications; he has not shown any intentional delay or refusal to provide him with medical treatment for his high blood pressure or any other medical condition for which he requested treatment. At most, he has established a disagreement with his treatment, unsuccessful treatment, or negligence, which does not amount to a constitutional violation."); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes,

hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Dowell's complaint in this case about his medical care fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. Thus, plaintiff's complaints about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

> New Orleans, Louisiana, this   14th   day of January, 2016.

> JOSEPH C. WILKINSON, JR.
> UNITED STATES MAGISTRATE JUDGE

---

[3]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.